**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS | § | |
| TECHNOLOGIES, LLC, | § | |
| | § | |
| v. | § | CASE NO. 2:13-CV-947-JRG-RSP |
| | § | |
| LG ELECTRONICS MOBILECOMM | § | |
| USA, INC. | § | |

**CLAIM CONSTRUCTION**
**MEMORANDUM AND ORDER**

On March 17, 2015, the Court held a hearing to determine the proper construction of the

disputed claim terms in United States Patents No. 5,754,946, 5,809,428, and 5,894,506. After

considering the arguments made by the parties at the hearing and in the parties' claim

construction briefing (Dkt. Nos. 55, 57 & 58),[1] the Court issues this Claim Construction

Memorandum and Order.

---

[1] Citations to documents (such as the parties' briefs and exhibits) in this Claim Construction
Memorandum and Order refer to the page numbers of the original documents rather than the
page numbers assigned by the Court's electronic docket unless otherwise indicated.

# Table of Contents

I. BACKGROUND ........................................................................................................... 4

II. LEGAL PRINCIPLES .............................................................................................. 7

III. THE PARTIES' STIPULATED TERMS ............................................................. 10

IV. DISPUTED TERMS IN U.S. PATENT NO. 5,754,946 .................................... 11

    A. "a portion of the displayed message," "a portion of a displayed message," and "a portion of the message" ...................................................................... 11

    B. "retransmission" .................................................................................................... 16

    C. "only upon actuation of the switch" ..................................................................... 20

    D. "communications network of claim 4" ................................................................. 21

    E. "means for transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message" ................................................................................................... 25

    F. "means for including an error correcting code in the radio frequency signals containing the message data" ................................................................................ 28

    G. "means for extracting a corrected message from the radio frequency signal" .................. 30

    H. "means for receiving said specified portion retransmitted from the communications network and for displaying the received portion on the display" ....................................... 32

    I. "means for retransmitting radio frequency signals containing the portion of the message to the mobile unit" ............................................................................... 35

    J. "means for transmitting a signal to a sender of the message indicating that the user has read the message" .............................................................................. 36

V. DISPUTED TERMS IN U.S. PATENT NO. 5,894,506 .................................... 36

    A. "canned message" ................................................................................................ 36

    B. "selecting an appropriate canned message from the second file for transmission to the second terminal" ............................................................................................. 38

    C. "means for retrieving the file of canned messages and the file of canned multiple response options from the memory" and "means for retrieving the file of canned messages and message codes from the memory" .............................................. 42

    D. "means for selecting one of the canned messages for communication to a designated other message terminal and for selecting multiple response options appropriate for the selected canned message," "means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal," and "means for adding parameters to the selected canned message for inclusion with the assigned message code transmitted over the communications link" .............................................. 46

**VI. DISPUTED TERMS IN U.S. PATENT NO. 5,809,428** ................................................... **47**

   A. "probe message" ....................................................................................... 47

   B. "data message" ....................................................................................... 50

**VII. CONCLUSION** ....................................................................................... **51**

**APPENDIX A** ....................................................................................... **52**

# I. BACKGROUND

Plaintiff brings suit alleging infringement of United States Patents No. 5,754,946 ("the '946 Patent"), 5,809,428 ("the '428 Patent"), and 5,894,506 ("the '506 Patent") (collectively, the "patents-in-suit"). In general, the patents-in-suit relate to wireless messaging systems.

The '946 Patent is titled "Nationwide Communication System." The '946 Patent issued on May 19, 1998, and bears a filing date of September 21, 1993. The Abstract of the '946 Patent states:

> A two-way communication system for communication between a system network and a mobile unit. The system network includes a plurality of base transmitters and base receivers included in the network. The base transmitters are divided into zonal assignments and broadcast in simulcast using multi-carrier modulation techniques. The system network controls the base transmitters to broadcast in simulcast during both systemwide and zonal time intervals. The system network dynamically alters zone boundaries to maximize information throughput. The system also uses a mobile unit which receives messages from the network and transmits messages to the network. The mobile unit includes a switch that allows a user to request the network to retransmit a received message that contains errors.

The '428 Patent is titled "Method and Device for Processing Undelivered Data Messages in a Two-Way Wireless Communications System." The '428 Patent issued on September 15, 1998, and bears a filing date of July 25, 1996. The '428 Patent incorporates by reference the '946 Patent. '428 Patent at 1:36-39. In general, the '428 Patent relates to acknowledging receipt of data messages and probe messages. The Abstract of the '428 Patent states:

> A network operations center transmits a data message to a wireless mobile unit and waits for a data acknowledgment message. If no acknowledgment is received within a specified time, the network operations center sends a probe message to attempt to locate the mobile unit and waits for a probe acknowledgment message. If still no acknowledgment, the network operations center marks the data message as undelivered and stores it for future delivery. If a mobile unit receives a probe message while its transmitter is powered off, it displays an indication to the subscriber that there is a message waiting to be delivered. The subscriber can then dial into the network operations center to retrieve the message. Or, when the transmitter of the mobile unit is powered back on, the mobile unit sends a registration message to the network operations center; and upon receiving the

registration message, the network operations center automatically re-transmits the undelivered data message to the mobile unit.

The '506 Patent is titled "Method and Apparatus for Generating and Communicating Messages Between Subscribers to an Electronic Messaging Network." The '506 Patent issued on April 13, 1999, and bears a filing date of September 5, 1996. In general, the '506 Patent relates to conveying so-called "canned" messages. The Abstract of the '506 Patent states:

> An electronic messaging network comprises a network operation center and plural message terminals, all including memories for storing corresponding files of canned messages and associated message codes. To send a canned message, a calling party selects a canned message stored at one message terminal and transmits the assigned message code to a receiving party at another message terminal via the network operation center. The receiving terminal retrieves the selected canned message from its memory using the received message code for display to the receiving party. Files of canned responses and associated response codes may also be stored in the memories at the terminals and network operation center to allow the exchange of selected canned response options in conjunction with canned messages to be in response code form.

The Court previously addressed the patents-in-suit in *Mobile Telecommunications Technologies, LLC v. Sprint Nextel Corp., et al.*, No. 2:12-CV-832, Dkt. No. 162 (E.D. Tex. May 2, 2014) ("*Sprint*," sometimes referred to by the parties as the "*Apple Markman Order*") (attached to Plaintiff's opening brief as Exhibit F); *see* Civil Action Nos. 2:13-CV-258, 2:13-CV-259 (consolidated with *Sprint*). In that litigation, the Court also addressed claim construction in a Memorandum Order denying Defendant Apple Inc.'s Motion for Summary Judgment. Civil Action No. 2:12-CV-832, Dkt. No. 384 (E.D. Tex. Nov. 7, 2014) ("*Apple Summary Judgment Order*") (attached to Plaintiff's opening brief as Exhibit G).

The Court also provided clarification regarding the term "retransmission" in a Memorandum Order granting in part and denying in part Plaintiff's Emergency Motion for Claim Construction in *Mobile Telecommunications Technologies, LLC v. Samsung*

*Telecommunications America, LLC*, No. 2:13-CV-259, Dkt. No. 81 (E.D. Tex. Dec. 11, 2014) ("*Samsung Supplemental Order*") (attached to Plaintiff's opening brief as Exhibit H).

Further, the Court addressed the '946 Patent and the '428 Patent in *Mobile Telecommunications Technologies, LLC v. Amazon.com, Inc.*, No. 2:13-CV-883, Dkt. No. 79 (E.D. Tex. Nov. 5, 2014) ("*Amazon*") (attached to Plaintiff's opening brief as Exhibit I).

Plaintiff has organized its briefing by separating ordinary disputed terms from disputed terms that Defendant argues are means-plus-function terms. Defendant's briefing addresses the disputed terms on a patent-by-patent basis. Because *Sprint* and *Amazon* addressed the disputed terms on a patent-by-patent basis, the Court does so again here, below.

As a threshold matter, Plaintiff has argued that Defendant's indefiniteness arguments regarding various "means" terms should be rejected because Defendant has not supported its arguments with any expert testimony. Plaintiff relies upon *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490 (Fed. Cir. 2014). Plaintiff acknowledges that the *Elcommerce* decision was vacated. Dkt. No. 58 at 6 n.5; *see Elcommerce.com, Inc. v. SAP AG*, 564 F. App'x 599 (Fed. Cir. June 6, 2014). Plaintiff nonetheless argues: "The vacation of *El Commerce* did not operate as a rejection of the Federal Circuit's reasoning. Rather, the decision was seemingly vacated as a result of the parties' settlement. The Federal Circuit in no way indicates that the underlying decision was incorrect." Dkt. No. 58 at 6 n.5. Plaintiff has cited no authority to support its argument that a vacated decision can be cited and relied upon for legal propositions contained therein. *Cf. A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1219 (Fed. Cir. 2010) (noting that a particular vacated decision was "of no precedential value").

Finally, in a Notice filed March 16, 2015, Plaintiff submits that it now asserts only Claims 1, 3, 4, 5, and 8 of the '946 Patent, Claims 8, 9, 10, 11, and 19 of the '506 Patent, and Claims 8 and 9 of the '428 Patent.  Dkt. No. 61.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the Court's preliminary constructions of the disputed terms, based upon review of the parties' briefing, with the aim of focusing the parties' arguments and facilitating discussion. Those preliminary constructions are set forth within the discussion of each term, below.

## II.  LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can aid in determining the

claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home*

*Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").  "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court.  *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)

(citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120.

In general, prior claim construction proceedings involving the same patents-in-suit are "entitled to reasoned deference under the broad principals of *stare decisis* and the goals articulated by the Supreme Court in *Markman*, even though *stare decisis* may not be applicable *per se*." *Maurice Mitchell Innovations, LP v. Intel Corp.*, No. 2:04-CV-450, 2006 WL 1751779, at *4 (E.D. Tex. June 21, 2006) (Davis, J.); *see TQP Development, LLC v. Inuit Inc.*, No. 2:12-CV-180, 2014 WL 2810016, at *6 (E.D. Tex. June 20, 2014) (Bryson, J.) ("[P]revious claim constructions in cases involving the same patent are entitled to substantial weight, and the Court has determined that it will not depart from those constructions absent a strong reason for doing so."); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839-40 (2015) ("prior cases will sometimes be binding because of issue preclusion and sometimes will serve as persuasive authority") (citation omitted).

## III. THE PARTIES' STIPULATED TERMS

The parties have reached agreement on constructions for certain terms, as stated in their P.R. 4-3 Joint Claim Construction and Prehearing Statement (Dkt. No. 49 at Ex. A) and in their P.R. 4-5(d) Joint Claim Construction Chart (Dkt. No. 59 at Ex. B).

In the course of briefing, the parties have also reached agreement that the terms "means for transmitting radio frequency signals containing a message to the mobile unit," "means for receiving, from the mobile unit, radio frequency signals representing a portion of the message that the user desires retransmission," and "means for receiving a radio frequency message from the network" in the '946 Patent do not require construction. Dkt. No. 57 at 2 n.1.

The parties' agreements are set forth in Appendix A to this Claim Construction

Memorandum and Order.

## IV.  DISPUTED TERMS IN U.S. PATENT NO. 5,754,946

**A.  "a portion of the displayed message," "a portion of a displayed message," and "a portion of the message"**

| **"a portion of the displayed message"** (Claims 1 & 8) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| "less than the entire displayed message, provided, however, that a portion of the displayed message is not limited to the exact text that is displayed on the screen and retransmission may be requested of message portions that have not actually been displayed" | "a part of the displayed[2] message for which a previous transmission attempt was made from the communications network to the mobile unit" |

Dkt. No. 55 at 5; Dkt. No. 57 at 2-3 (emphasis omitted).[3]

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties

with the following preliminary construction: "less than the entire displayed message."

(1)  The Parties' Positions

Plaintiff argues that Defendant's proposal of substituting "part" for "portion" "is made

without reason and serves only to confuse the jury."  Dkt. No. 55 at 5.  Plaintiff also argues that

Defendant's proposed construction is inconsistent with the Court's prior rulings in *Amazon* as

well as in the *Sprint* litigation involving defendants Apple Inc. ("Apple") and Samsung

Telecommunications America, LLC ("Samsung").  *Id.*

---

[2] In the parties' March 3, 2015 Joint Claim Construction Chart, Defendant's proposal omits the word "displayed."  Dkt. No. 59, Ex. A at pp. 2 & 9 of 18.

[3] The parties previously disputed the terms "a portion of a displayed message" and "a portion of the message" in Claim 7.  Because Plaintiff no longer asserts Claim 7 (*see* Dkt. No. 61), the Court does not address those terms.

Defendant responds that clarification is needed that, "[a]s clearly indicated by the claim language and specification, the purpose of the retransmission request is to obtain a better copy of the portion that was previously sent by the network and garbled during transmission." Dkt. No. 57 at 3. Defendant submits that "[t]he network does not send out a copy of the portion of the message containing the same errors that appeared in the original message" but instead the system retransmits the original message, or portions thereof, a second time. *Id.* at 4-5; *see id.* at 8 ("[T]here must have been a prior attempt to transmit to the mobile device the requested portions for retransmission that were not displayed.") Defendant also seeks clarification that the term "transmission" means that "[t]he network sent the message, but the mobile device did not necessarily receive it." *Id.* at 6. Defendant concludes that "the previous message sent by the network need not be received by the mobile unit – correctly or at all – but it must have been sent to the mobile unit." *Id.* at 7; *see id.* at 8 ("The '946 patent does not contemplate retransmission of portions for which an initial transmission attempt to the mobile device was not made, and [Plaintiff] should not be permitted to expand the scope of its claims to any such embodiments.").[4]

Plaintiff replies that "independent claims 1, 7 and 8 contain no reference at all to a cause or reason for the retransmission request (such as an error in the message). In fact, the word

---

[4] The parties have also discussed testimony of a named inventor, but such testimony is of little if any weight during claim construction proceedings and has not significantly affected the Court's analysis. *See* Dkt. No. 57, Ex. 2, 3/31/2014 Hays dep. at 242:12-22; *id.*, Ex. 3, 8/14/2014 Hays dep. at 104:18-105:1; *see also Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008) (noting that inventor testimony is "limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application"); *but see Phillips*, 415 F.3d at 1317 ("Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and *inventor testimony*, dictionaries, and learned treatises.") (emphasis added; citations and internal quotation marks omitted).

'error' does not even appear in the independent claims." Dkt. No. 58 at 1. Plaintiff argues that in addition to limiting the claims to a preferred embodiment, Defendant overlooks other ways in which an error could occur, "for example, from the transmission of the message from the original sender to the base receiver ('946 Pat. at 19:10-22), or during message processing at the network operations center before retransmission to the mobile unit." *Id.* at 2. Further, Plaintiff argues, Claims 1 and 8 require only a "retransmission," not transmitting and retransmitting. *Id.* Plaintiff emphasizes that "this Court has previously rejected limiting the claims in such a way that retransmission must occur 'from the same source to the same destination,' which is essentially the same position [Defendant] advances here." *Id.* at 3 (citing *Samsung Supplemental Order* at 2).

At the March 17, 2015 hearing, neither side had any objection to the Court's proposed construction except that Plaintiff maintained that the Court should include, in its construction, the findings set forth in *Sprint* and *Amazon* that Plaintiff has proposed here.

(2) Analysis

In *Sprint* and in *Amazon*, the Court construed this disputed term to mean "less than the entire displayed message." *See Sprint* at 21-25; *see also Amazon* at 10-16. In particular, in *Sprint* the Court found that "the term 'portion' refers to something less than an entire message." *Sprint* at 24.

In *Amazon*, the Court found:

[T]he . . . intrinsic evidence demonstrates that 'message' and 'displayed message' are not limited to the exact text displayed on an end user's device. Instead, the terms 'message' and 'displayed message' serve to distinguish between different messages, each of which might be viewed in part or in whole by a user. The Court therefore rejects Defendant's argument that retransmission of message portions can be requested only as to message portions that have actually been displayed.

*Amazon* at 16.  The Court likewise rejected any argument that "the only data that would qualify

as a 'retransmission' is the exact data that was previously displayed on the screen of the end

user's device, errors and all."  *Id.* at 15.

Claims 1-3 of the '946 Patent recite (emphasis added):

1.  A mobile unit for transmitting and receiving radio frequency signals to and
from a communications network comprising:
    means for receiving a radio frequency message from the network;
    a display for displaying said message;
    a switch actuatable to specify a *portion of the displayed message* for which
a user desires retransmission from the communications network;
    means for transmitting, only upon actuation of the switch, a signal to the
communications network requesting retransmission of said specified *portion* of
said message; and
    means for receiving said specified *portion* retransmitted from the
communications network and for displaying the received specified *portion* on the
display.

2.  The mobile unit of claim 1, further comprising:
    means for detecting *errors* in the received message,
    said display including means for highlighting said errors when the
message is displayed on said display.

3.  The mobile unit of claim 1, further comprising:
    means for receiving a radio frequency signal from the communication
network including a retransmitted message and an *error correcting code*; and
    means for extracting a corrected message from the radio frequency signal.

The Summary of the Invention refers to embodiments in which messages are transmitted

by a network and received by a mobile device.  *See* '946 Patent at 5:8-40.  The specification

further discloses:

The request retransmission button 1622 allows the user to request the base
transmitters to *retransmit received messages, or partial messages containing
errors*.  When the mobile unit receives a message containing errors, it displays the
message on display 1606 with the *erroneous portions highlighted* (e.g.,
underlined, placed in brackets, or printed in reverse video).  The user reads the
message and determines whether the displayed message is acceptable.  If not, the
user can cause the system to *retransmit the message, or the erroneous portions*,
by pressing request retransmission button 1622.  By pressing button 1622, the
user causes the transmit logic 1518 to transmit a signal to the base receivers

- 14 -

> indicating that the user wishes the message or a partial message to be
> retransmitted. The base transmitters then retransmit the message to the mobile
> unit at an appropriate time.

*Id.* at 17:8-23 (emphasis added). Defendant notes: "Indeed, because the errors were the result of the original message being garbled in transit, the network would not have a copy of the erroneous data to resend; it would only have a copy of the error-free original portion." Dkt. No. 57 at 4.

Nonetheless, because "errors" and an "error correcting code" are recited by dependent claims, as quoted above, the doctrine of claim differentiation weighs against interpreting independent Claim 1 as requiring errors. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.").

In addition, the specification discloses receiving "incomplete" or "partial" messages. *See* '946 Patent at 9:26-28 ("If the mobile unit 624 does not completely receive the message, it can generate and broadcast a negative acknowledge signal."), 15:19-20 (similar) & 17:5-7 ("negative acknowledgment signal which indicates that the message has not been completely or properly received"). Thus, to whatever extent Defendant's proposed constructions imply the presence of an error, Defendant's proposed constructions would improperly import a specific feature from particular embodiments. *See Comark*, 156 F.3d at 1187.

Finally, Defendant's proposal of a "previous transmission attempt" is itself vague and would tend to confuse rather than clarify the scope of the "portion" terms. Instead, Defendant's arguments are directed primarily to Defendant's proposal of requiring a "previous transmission attempt" in the construction of "retransmission," which is a disputed term addressed separately below. For all of these reasons, and particularly given that Defendant had no objection to the

Court's preliminary construction at the March 17, 2015 hearing, Defendant's proposed construction for the "portion" term is hereby expressly rejected.

As to Plaintiff's proposal that the disputed term is "not limited to the exact text that is displayed on the screen and retransmission may be requested of message portions that have not actually been displayed," Plaintiff has failed to adequately justify introducing these limitations into the construction.  Because such a limitation would tend to confuse rather than clarify the scope of the claims, Plaintiff's proposed construction is hereby expressly rejected.

The Court therefore hereby construes **"a portion of the displayed message"** to mean **"less than the entire displayed message."**

## B.  "retransmission"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "transmission of data, with the understanding that such transmission is not so limited as to require that a retransmission can only occur after a first transmission of the data from the communications network to the mobile unit" | "transmission of data, for which a previous transmission attempt was made from the communications network to the mobile unit" |

Dkt. No. 55 at 8; Dkt. No. 57 at 8.  The parties submit that this term appears in Claims 1, 7, and 8.  Plaintiff no longer asserts Claim 7.  *See* Dkt. No. 61.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning.  Defendant's request to add 'for which a previous transmission attempt was made from the communications network to the mobile unit' is rejected."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that Defendant's proposal is inconsistent with the Court's rulings in the *Sprint* litigation.  Dkt. No. 55 at 9.  Plaintiff also argues that "by adding the word 'attempt,'

[Defendant's] proposed construction implies a previous transmission was unsuccessful – a limitation that again violates this Court's prior rulings on the term." *Id.*

Defendant responds that its proposal "clarifies that the user's request is for data for which a previous transmission *attempt* was made from the communications network to the mobile unit." Dkt. No. 55 at 8. Defendant argues that "the initial transmission and subsequent retransmission attempts are executed by the communications network, thereby precluding the relay scenario proffered by [Plaintiff] in the *Apple* and *Samsung* cases." *Id.* at 9. "To be clear," Defendant submits, "[Defendant's] construction does not require that the portion of the message received by the mobile unit that the user selects for retransmission, and the portion that is retransmitted, are the same – rather, it requires that the retransmitted portion (*i.e.*, the content that the user desires from the communication network) was part of the full message that the network previously attempted to send, but which was received with either garbled or missing portions." *Id.* at 11. Further, Defendant submits, Defendant's proposal of "[t]he word 'attempt' does not connote failure; it is consistent with both successful and unsuccessful transmissions." *Id.* Finally, Defendant argues that "the understood meaning of the prefix 're' – again – connotes a previous transmission attempt from the communication network to the mobile unit." *Id.* at 9 (citing *id.*, Ex. 4, *Webster's Ninth New Collegiate Dictionary* 978 (1988) ("again : anew"); *id.*, Ex. 5, *Webster's II New Riverside University Dictionary* 977 (1984) (same)).

Plaintiff's reply brief addresses this disputed term together with the "portion" terms addressed above. *See* Dkt. No. 58 at 1-3.

At the March 17, 2015 hearing, Defendant was agreeable to the Court's preliminary construction. Plaintiff maintained that the Court's findings in prior cases should be incorporated into the construction.

<u>(2) Analysis</u>

In the *Apple Summary Judgment Order*, the Court found:

[T]he court construes the term "retransmission" to have its plain and ordinary meaning, and further finds that the plain and ordinary meaning of "retransmission" is not so limited as to require that a retransmission can only occur after a first transmission of the message from the communications network to the mobile unit.

*Apple Summary Judgment Order* at 3 (internal quotation marks omitted).

In the *Samsung Supplemental Order*, the Court found:

The Court has never found that "retransmitting" excludes "transmit[ting] again." To the contrary: the Court found that the term carries its plain meaning, but simply rejected the additional limitations (. . . from the same source to the same destination) urged first by Apple and now by Samsung. To put it differently, [Plaintiff's] construction covers a scenario where data is sent from point A to point B and then sent again from point B to point C, while it is Samsung that urges that such an implementation is not "retransmitting." To be clear, the Court does not now hold – and did not hold in the Apple case – that the plain and ordinary meaning of the term "retransmit" excludes the scenario outlined by Samsung (and previously Apple), just that the meaning of that term is not limited to only that scenario.

*Samsung Supplemental Order* at 2 (emphasis omitted).[5]

Defendant has submitted that in the prior rulings, the Court "sa[id] nothing regarding previous transmission *attempts*, which may result in successful or unsuccessful transmissions." Dkt. No. 57 at 11.

Defendant cites the Summary of the Invention, in particular as to the embodiment that, Defendant submits, appears to correspond to Claim 8:

---

[5] Although the Court has noted, for background purposes, prior claim construction decisions involving various terms in the patents-in-suit, the findings and analyses in prior cases were responsive to issues and arguments presented in those prior cases. The present Claim Construction Memorandum and Order does *not* thereby adopt those prior findings or analyses as to any term disputed in the present case. For example, as to the term "retransmission," the Court previously construed the term to have its plain meaning but rejected specific arguments made by Apple and Samsung. Defendant in the present case is not making the same arguments, so the Court need not address such past arguments.

> In yet another embodiment, the invention is directed to a method for transmitting messages from a communications network to a mobile unit comprising (a) *transmitting radio frequency signals containing message data from the network to the mobile unit*, (b) receiving the radio frequency signals containing the message data at the mobile unit, (c) receiving at the mobile unit a request from a user to retransmit the message data, (d) transmitting a request retransmission signal from the mobile unit to the network, (e) receiving the request retransmission signal by the network, and (f) *retransmitting the message data by the network* in the form of radio frequency signals.

'946 Patent at 5:29-40 (emphasis added). Although this passage appears in the Summary of the Invention, the "primacy of the claim language" weighs against reading this passage as limiting. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014); *see Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014) ("In claim construction, this court gives primacy to the language of the claims, followed by the specification."); *see also Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1300 (Fed. Cir. 2013) ("Claim construction focuses primarily on the language of the claims.") (citing *Phillips*, 415 F.3d 1303); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[T]he claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim.").

Defendant also cites the language of Claim 7, arguing that "claim 7's requirement that the transmission and retransmissions both originate at the communications network is instructive as to the intended meaning of 'retransmission' as used in these claims." Dkt. No. 57 at 10 (citing *Phillips*, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.")). Review of Claim 7, however, reveals no requirement as to where retransmission must occur (emphasis added):

> 7. A communications network for transmitting radio frequency signals to a mobile unit and for receiving radio frequency signals from the mobile unit, the

> mobile unit having a display and a switch actuatable to specify a portion of a
> displayed message for which a user desires *retransmission* after viewing the
> displayed message transmitted from the communications network, the network
> comprising:
>> means for transmitting radio frequency signals containing a message to the
>> mobile unit;
>> means for receiving, from the mobile unit, radio frequency signals
>> representing a portion of the message that the user desires *retransmission*;
>> means for *retransmitting* radio frequency signals containing the portion of
>> the message to the mobile unit.

On balance, to whatever extent Defendant has argued that the term "retransmission" itself requires a previous transmission "attempt," Defendant's argument is hereby expressly rejected as lacking support in the intrinsic evidence. To the extent Defendant relies upon surrounding claim language to make such an argument, Defendant's argument involves details of the accused instrumentalities that are not proper for the Court to consider during these claim construction proceedings. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.").

Moreover, as noted above, at the March 17, 2015 hearing Defendant was agreeable to the Court's preliminary construction.

Finally, Plaintiff's proposed construction may be misinterpreted by the finder of fact as characterizing the claims as a whole, rather than the term "retransmission," so Plaintiff's proposed construction is hereby expressly rejected.

The Court otherwise hereby construes **"retransmission"** to have its **plain meaning**.

## C. "only upon actuation of the switch"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "only upon user activation of the switch" |

Dkt. No. 55 at 4; Dkt. No. 57 at 11.  The parties submit that this disputed term appears in Claim 1 of the '946 Patent.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "only upon user activation of the switch."

Both sides agreed to this construction at the March 17, 2015 hearing.  Plaintiff noted its opposition to Defendant's arguments regarding the prosecution history,[6] which Plaintiff expressed might, if adopted by the Court, limit the potential scope of the doctrine of equivalents.

Because the parties evidently do not dispute the literal scope of the disputed term, the Court does not address any doctrine of equivalents argument, or any response thereto, that might arise at a later stage of this litigation.  Thus, no further construction is required.

The Court therefore hereby construes **"only upon actuation of the switch"** to mean **"only upon user activation of the switch."**

### D.  "communications network of claim 4"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| "the communications network of Claim 7" | Indefinite under 35 U.S.C. § 112, ¶ 2. |

Dkt. No. 55 at 7; Dkt. No. 57 at 12.  The parties submit that this disputed term appears in Claims 5 and 6.  Plaintiff no longer asserts Claim 6.  *See* Dkt. No. 61.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Plaintiff's request for judicial correction is rejected."

---

[6] Defendant has argued that "[t]he patentees disclaimed automatic error correction during prosecution."  Dkt. No. 57 at 12.

Plaintiff argues that "[t]he reference to Claim 4 as opposed to Claim 7 is an obvious ministerial error as Claim 4 claims a mobile unit while Claim 7 correctly claims the communications network and describes its functions."  Dkt. No. 55 at 7.

Defendant responds that "claim 5 is capable of more than one reasonable interpretation," such that "[i]t is not clear on the face of the patent whether claim 5 was intended to refer to claim 1 or 7 (or any other claim)," "and a review of the file history does not clarify the issue." Dkt. No. 57 at 12-13.  Defendant notes that "the claims were initially drafted this way, and the issue was never raised by the Examiner."  *Id.* at 13.

Plaintiff replies that "[p]atent claims should be construed to preserve their validity, if possible, and because the preamble of dependent claims 5 and 6 make clear they could only depend from claim 7 (which is the only independent claim that shares the 'a communication network . . .' preamble), the Court may and should correct the obvious and harmless error."  Dkt. No. 58 at 4.

(2)  Analysis

Judicial correction of an error in a patent may be available "if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims."  *Novo Indus. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003); *see LG Elecs., Inc. v. Quanta Computer Inc.*, 566 F. Supp. 2d 910, 913 (W.D. Wis. 2008) (noting the "nearly impossible standard for judicial correction of a patent" and citing *Novo*, 350 F.3d 1348, which "refus[ed] to correct 'a' to 'and' because other possibilities for correction existed").

Claims 1 and 4-7 of the '946 Patent recite (emphasis added):

1.  A mobile unit for transmitting and receiving radio frequency signals to and from a *communications network* comprising:

      means for receiving a radio frequency message from the network;

      a display for displaying said message;

      a switch actuatable to specify a portion of the displayed message for which a user desires *retransmission from the communications network*;

      means for transmitting, only upon actuation of the switch, *a signal to the communications network requesting retransmission* of said specified portion of said message; and

      means for receiving said specified portion *retransmitted* from the *communications network* and for displaying the received specified portion on the display.

\* \* \*

4.  The mobile unit of claim 1, wherein the signal transmitted by the transmitting means indicates to the network that the user has read the message.

5.  *The communications network of claim 4*, wherein the *means for retransmitting* includes means for including an error correcting code in the radio frequency signals containing the message data.

6.  *The communications network of claim 4,* further comprising means for transmitting a signal to a sender of the message indicating that the user has read the message.

7.  A *communications network* for transmitting radio frequency signals to a mobile unit and for receiving radio frequency signals from the mobile unit, the mobile unit having a display and a switch actuatable to specify a portion of a displayed message for which a user desires retransmission after viewing the displayed message transmitted from the *communications network*, the network comprising:

      means for transmitting radio frequency signals containing a message to the mobile unit;

      means for receiving, from the mobile unit, radio frequency signals representing a portion of the message that the user desires retransmission;

      *means for retransmitting* radio frequency signals containing the portion of the message to the mobile unit.

On one hand, Plaintiff's proposed construction is consistent with, for example, the recital

of "means for retransmitting" in Claim 5 and Claim 7.  On the other hand, Claim 1, from which

Claim 4 depends, recites a "communications network" as well as "retransmission" and

"retransmitted."  On balance, the correction proposed by Plaintiff is "subject to reasonable

debate." *Novo*, 350 F.3d at 1354. Finally, the *Blackboard* case cited by Plaintiff is distinguishable as having involved a printing error upon issuance of a patent. *Blackboard, Inc. v. Desire2Learn, Inc.*, No. 9:06-CV-155, 2007 WL 2255227, at *12 (E.D. Tex. Aug. 3, 2007) (Hines, J.) (finding that "when printing the patent, the PTO simply omitted one letter from the word" "predefined" so that the issued claim recited "redefined"; noting that "the specification never uses 'redefined'").

Plaintiff's request for judicial correction is therefore denied. *Novo*, 350 F.3d at 1354; *see LG*, 566 F. Supp. 2d at 913.

As to Defendant's indefiniteness argument, however, Defendant has failed to demonstrate that the scope of the claims is not reasonably certain. Instead, antecedent basis for the terms at issue is present either explicitly or implicitly. *See Energizer Holdings Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) (holding that "an anode gel comprised of zinc as the active anode component" provided implicit antecedent basis for "said zinc anode"); *see also Ex Parte Porter*, 25 U.S.P.Q. 2d (BNA) 1144, 1145 (B.P.A.I. 1992) ("The term 'the controlled fluid' . . . finds reasonable antecedent basis in the previously recited 'controlled stream of fluid . . . .'"); *Manual for Patent Examining Procedure* § 2173.05(e) (9th ed., Mar. 2014) (noting that "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite").

The parties' dispute having thus been resolved, no further construction is necessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond*

*Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.");

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction.").

**E. "means for transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary; not in means-plus-function format<br><br>In the alternative:<br><br>Function:<br>    "transmitting a signal to the communications network requesting retransmission of said specified portion of said message"<br><br>Structure:<br>    "transmitter 1520; and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message"<br><br>Structure:<br>    "None.  Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 17; Dkt. No. 57 at 13-14.  The parties submit that this term appears in Claim 1.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Function: 'transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message' / Structure: 'input switches 1516, transmit logic 1518, transmitter 1520, and antenna 1502; and equivalents thereof.'"

<u>(1)  The Parties' Positions</u>

Plaintiff argues that the claim recites the structure of a transmitter, and "the language 'only upon actuation of the switch,' merely describes a condition upon when the function of transmitting is to take place."  Dkt. No. 55 at 18.

Defendant responds that "[t]his term does not avoid the ambit of 35 U.S.C. § 112, ¶ 6 because it fails to provide any structure for the conditional feature of the limitation – 'only upon actuation of the switch.'"  Dkt. No. 57 at 14.  Defendant argues that this means-plus-function term is indefinite because "[f]or computer-implemented functions, the specification must disclose a corresponding algorithm, and neither the input switch, transmit logic, nor transmitter (or accompanying disclosure) qualify as the requisite algorithm."  *Id.*

Plaintiff replies that "to the extent § 112¶6 governs this term, the term is not computer implemented."  Dkt. No. 58 at 8.

At the March 17, 2015 hearing, Plaintiff argued that to whatever extent an algorithm is required, the algorithm appears in the disputed term itself, which recites that transmission occurs "only upon actuation of the switch."

<u>(2)  Analysis</u>

It is well settled that [a] claim limitation that actually uses the word "means" invokes a rebuttable presumption that [35 U.S.C] § 112, ¶ 6 applies.  By contrast, a claim term that does not use "means" will trigger the rebuttable presumption that § 112, ¶ 6 does not apply.  The term "means" is central to the analysis.

*Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371-1372 (Fed. Cir. 2003) (citations and internal quotation marks omitted).

One way in which this presumption can be overcome is if the claim recites sufficient structure for performing the described functions in their entirety.  To determine if the claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate

structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.

*TecSec, Inc. v. Int'l Bus. Machines Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013) (citations and internal quotation marks omitted).

The disputed term uses the word "means," thereby invoking the presumption that 35 U.S.C. § 112, ¶ 6 applies. Plaintiff has failed to rebut the presumption. Likewise, Plaintiff has not adequately justified departing from the claimed function as recited in the disputed term, including that the "transmitting" occurs "only upon actuation of the switch."

As to whether sufficient corresponding structure is disclosed, the specification discloses:

A set of *input switches 1516* is provided to allow the user to input a reply to a received message, or to otherwise generate a message to be transmitted by the mobile transceiver. The input switches 1516 also include a switch that allows the user to request retransmission of a message corrupted by errors. The input switches are connected to *transmit logic 1518* which decodes the signal from the input switches 1516 to generate an output signal to the *transmitter 1520*. The transmitter 1520 generates an appropriately modulated RF signal to be broadcast by *antenna 1502*.

'946 Patent at 15:36-45 (emphasis added).

These structures are "clearly linked or associated with the claimed function," *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1219 (Fed. Cir. 2003), and are disclosed as performing that function. *See Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) ("While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function."). Although the above-quoted disclosure of "transmit logic 1518" might be read as referring to an algorithm, the specification contains no suggestion that such a structure would not be readily understood by a person of ordinary skill in the art, and "the amount of detail that must be included in the specification depends on the

subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention." *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011).

The Court therefore hereby finds that for the **"means for transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message,"** the function is **"transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message,"** and the corresponding structure is **"input switches 1516, transmit logic 1518, transmitter 1520, and antenna 1502; and equivalents thereof."** Defendant's indefiniteness argument is hereby expressly rejected.

**F. "means for including an error correcting code in the radio frequency signals containing the message data"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function:<br>    "including an error correcting code in the radio frequency signals containing the message data"<br><br>Structure:<br>    "control logic 1304/1404 and combiner 1316/1426 and an error correction code; and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "including an error correcting code in the radio frequency signals containing the message data"<br><br>Structure:<br>    "None.  Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 23-24; Dkt. No. 57 at 15.  The parties submit that this term appears in Claim 5.

The parties agree that this is a means-plus-function term, and they agree upon the claimed function.  Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Indefinite."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that "the specification states that control logic system 1304 controls 'the operation of the base transmitter unit,' ('946 Pat. at 13:64-14:1), which elsewhere is identified as transmitting error correcting codes.  (*Id.* at 4:41-46)."  Dkt. No. 55 at 24.

Defendant responds that this disputed term is indefinite because "[t]he 'logic' blocks/sections to which [Plaintiff] cites . . . at most describe or illustrate the recited function – not how the function is performed."  Dkt. No. 57 at 16.

Plaintiff replies it "identifies special-purpose hardware, not computer-implemented structure," and "to the extent an algorithm is required, the '946 Patent specification provides extensive discussion (even incorporating a well-known treatise) regarding error correction that a PHOSITA [(person having ordinary skill in the art)] would recognize as disclosing an algorithm to perform the recited functions."  Dkt. No. 58 at 10.

<u>(2)  Analysis</u>

On one hand, the specification states: "Further information regarding error correcting codes may be found in Gallagher, 'Information Theory and Reliable Communication,' Wiley 1968, which is hereby incorporated by reference."  '946 Patent at 26:16-19.  On the other hand, "material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause."  *Default Proof*, 412 F.3d at 1301.  Finally, the "control logic 1304/1404" and "combiner 1316/1426" identified by Plaintiff are not "clearly linked or associated with the claimed function."  *Med. Instrumentation*, 344 F.3d at 1219; *see* '946 Patent at 4:41-46, 13:64-14:1, 14:12-15 & 26:2-19.  This lack of corresponding structure renders the disputed term indefinite.  *See Default Proof*, 412 F.3d

at 1302 ("[W]hile it is true that the patentee need not disclose details of structures well known in the art, the specification must nonetheless disclose some structure.") (citation omitted).

The Court therefore hereby finds that for the **"means for including an error correcting code in the radio frequency signals containing the message data,"** the function is **"including an error correcting code in the radio frequency signals containing the message data,"** and the specification fails to disclose sufficient corresponding structure.

## G.  **"means for extracting a corrected message from the radio frequency signal"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function:<br>    "extracting a corrected message from the radio frequency signal"<br><br>Structure<br>    "display and storage logic section 1508 and 1708; and an error correcting code; and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "extracting a corrected message from the radio frequency signal"<br><br>Structure:<br>    "None.  Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 23-24; Dkt. No. 57 at 15; Dkt. No. 59, Ex. A at p. 5 of 18.  The parties submit that this term appears in Claim 3.

The parties agree that this is a means-plus-function term, and they agree upon the claimed function.  Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Function: 'extracting a corrected message from the radio frequency signal' / Structure: 'display and storage logic section 1508 or 1708, and an error correcting code; and equivalents thereof.'"

<u>(1)  The Parties' Positions</u>

Plaintiff argues that "[a] PHOSITA would understand the specification to identify structure in the mobile unit to extract this signal."  Dkt. No. 55 at 25.

Defendant responds that this disputed term is indefinite because there is no algorithm disclosed for performing the claimed function and "[t]he 'logic' blocks/sections to which [Plaintiff] cites . . . at most describe or illustrate the recited function – not how the function is performed."  Dkt. No. 57 at 16.

Plaintiff replies as to this term together with the "means for including . . ." term addressed above.  *See* Dkt. No. 58 at 9-10.

<u>(2)  Analysis</u>

In *Amazon*, the parties reached substantive agreement as to the "display and storage logic section 1508 or 1708," but the parties disputed whether the corresponding structure must include an "error correcting code."  *See Amazon* at 20 & 22.  Here, by contrast, Defendant argues that the "logic sections" are insufficient disclosures of structure.

Based on the same evidence considered in *Amazon*, the Court reaches the same construction here.  *See Amazon* at 21-25; *see, e.g.,* '946 Patent at 14:66-15:35 ("The receiver 1506 is connected to a display and storage logic section 1508 to process the received signal.").

As to whether a sufficient algorithm is disclosed, the reference to an "error correcting code" is sufficient.  *See Typhoon Touch*, 659 F.3d at 1385 ("[T]he amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention."); *see also Default Proof*, 412 F.3d at 1302 ("the patentee need not disclose details of structures well known in the art"); '946 Patent at 26:16-19.  Unlike for the term "means for including an error

correcting code in the radio frequency signals containing the message data," addressed above, here the necessary linkage, between the claimed function and the corresponding structure disclosed in the specification, is present. *See id.* at 14:66-15:35.

The Court therefore hereby finds that for the **"means for extracting a corrected message from the radio frequency signal,"** the function is **"extracting a corrected message from the radio frequency signal,"** and the corresponding structure is **"display and storage logic section 1508 or 1708, and an error correcting code; and equivalents thereof."**

**H. "means for receiving said specified portion retransmitted from the communications network and for displaying the received portion on the display"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary; not in means-plus-function format<br><br>In the alternative:<br><br>Function:<br>    "receiving said specified portion retransmitted from the communications network and for displaying the received portion on the display"<br><br>Structure:<br>    "receiver 1506 and display 1514; and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "means for receiving said specified portion retransmitted from the communications network and for displaying the received portion on the display"<br><br>Structure:<br>    "None.  Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 21; Dkt. No. 57 at 16-17.  The parties submit that this term appears in Claim 1.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Function: 'receiving said specified portion retransmitted from the communications network and displaying the received portion on the display' / Structure: 'receiver 1506, display and storage logic section 1508 or 1708, and display 1514; and equivalents thereof.'"

Plaintiff argues that "these terms clearly recite the structure of a receiver in the claim terms themselves" and, alternatively, the specification discloses receivers.  Dkt. No. 55 at 22-23.

Defendant responds that the function of "displaying . . ." "requires computer-implemented software for presenting the retransmitted portion in displayable form," and "the identified structure – 'receiver 1506 and equivalents thereof' – is clearly insufficient to accomplish all recited functions, particularly 'displaying the received portion on the display.'" Dkt. No. 57 at 17.

Plaintiff replies by reiterating that "the claim discloses sufficient structure in the form of a receiver and a display," and "[t]o the extent computer-implemented structure is required, a general-purpose computer without special programming can perform the recited functions."  Dkt. No. 58 at 9.

(2)  Analysis

> It is well settled that [a] claim limitation that actually uses the word "means" invokes a rebuttable presumption that [35 U.S.C] § 112, ¶ 6 applies.  By contrast, a claim term that does not use "means" will trigger the rebuttable presumption that § 112, ¶ 6 does not apply.  The term "means" is central to the analysis.

*Apex*, 325 F.3d at 1371-1372 (citations and internal quotation marks omitted).

> One way in which this presumption can be overcome is if the claim recites sufficient structure for performing the described functions in their entirety.  To determine if the claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.

*TecSec*, 731 F.3d at 1347 (citations and internal quotation marks omitted).

The disputed term uses the word "means," thereby invoking the presumption that 35 U.S.C. § 112, ¶ 6 applies. Plaintiff has failed to rebut the presumption. *See Apex*, 325 F.3d at 1371-1372; *see also TecSec*, 731 F.3d at 1347.

The specification discloses:

> The *receiver 1506* is connected to a *display and storage logic section 1508* to process the received signal. An annunciator 1510 to alert the user that a message has been received is connected to and controlled by the display and storage logic 1508. The annunciator 1510 may commonly include a sound producing device such as a beeper, or a vibrator, or a flashing light.
>
> A set of display controls 1512 to control the display of the mobile transceiver 1500 is connected to the display and storage logic 1508. A *display 1514*, preferably an LCD display, is also connected to the display and storage logic 1508 to display messages and various other information to the user.

'946 Patent at 14:66-15:11 (emphasis added).

Thus, the "receiver 1506," "display and storage logic section 1508," and "display 1514" are disclosed as structures "clearly linked or associated with the claimed function." *Med. Instrumentation*, 344 F.3d at 1219. Because the specification links the claimed function to such structures rather than to a general-purpose computer, no algorithm is required. *See, e.g., Net MoneyIN Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). Alternatively and in addition, even if the "display and storage logic section 1508" were deemed to be a general-purpose processor, no algorithm need be disclosed for the function of displaying. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("Absent a possible narrower construction of the terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general purpose computer without special programming. As such, it was not necessary to disclose more structure than the general purpose processor that performs those

functions."). Defendant's argument regarding the purported failure to meet the algorithm requirement is therefore hereby rejected.

The Court accordingly hereby finds that for the **"means for receiving said specified portion retransmitted from the communications network and for displaying the received portion on the display,"** the function is **"receiving said specified portion retransmitted from the communications network and displaying the received portion on the display,"** and the corresponding structure is **"receiver 1506, display and storage logic section 1508 or 1708, and display 1514; and equivalents thereof."**

**I. "means for retransmitting radio frequency signals containing the portion of the message to the mobile unit"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Function:<br>    "retransmitting radio frequency signals containing the portion of the message to the mobile unit"<br><br>Structure<br>    "base transmitter 612, base transmitter 614, base transmitter 1300[] (Fig. 13)[,] or base transmitter 1400 (Fig. 14); and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "retransmitting radio frequency signals containing the portion of the message to the mobile unit"<br><br>Structure:<br>    "None.  Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 18-19; Dkt. No. 57 at 17; Dkt. No. 49, Ex. B at p. 4 of 10.  The parties submit that this term appears in Claim 7.  Because Plaintiff no longer asserts Claim 7 (*see* Dkt. No. 61), the Court does not construe this term.

**J. "means for transmitting a signal to a sender of the message indicating that the user has read the message"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary; not in means-plus-function format<br><br>In the alternative:<br><br>Function:<br>    "transmitting a signal to a sender of the message indicating that the user has read the message"<br><br>Structure:<br>    "base transmitter 612, base transmitter 614, base transmitter 1300, or base transmitter 1400; and equivalents thereof" | This term should be construed under 35 U.S.C. § 112, ¶ 6.<br><br>Function:<br>    "transmitting a signal to a sender of the message indicating that the user has read the message"<br><br>Structure:<br>    "None. Claim term is therefore indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 18-19; Dkt. No. 49, Ex. B at p. 4 of 10. The parties submit that this term appears in Claim 6. Because Plaintiff no longer asserts Claim 6 (*see* Dkt. No. 61), the Court does not construe this term.

## V. DISPUTED TERMS IN U.S. PATENT NO. 5,894,506

**A. "canned message"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "predefined message" | "predefined sequence of characters for viewing by a user" |

Dkt. No. 55 at 11; Dkt. No. 57 at 18. The parties submit that this term appears, for example, in Claim 8.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "predefined sequence of characters."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that the specification "does not limit canned messages to a specific type of message," and "[t]he prosecution history likewise shows the proper scope of the invention as transmitting and relaying message codes in place of commonly used, predefined messages." Dkt. No. 55 at 12.  Plaintiff also submits that the Court's previous construction relied upon a dictionary definition that also distinguishes between information that is visible to a user and information that is not visible to a user.  *Id.* at 13.[7]

Defendant argues that "[Plaintiff's] construction is divorced from the claim language and specification, which clearly indicate that the claimed messages consists [*sic*] of data intended to be viewed by a user."  Dkt. No. 57 at 19.  Defendant argues that the Court properly found in *Sprint* that "canned message" was used throughout the specification to refer to a "phrase" and "text," and the asserted claims require the "canned message" to be "displayed."  *Id.* at 19-20.

Plaintiff replies that "[t]he '506 Patent itself describes canned messages as 'commonly used' and does not limit a canned message to any specific type of message."  Dkt. No. 58 at 4. Plaintiff argues that "[t]he inclusion of the term 'characters' does not clarify the issue for the jury—it merely raises the issue of what constitutes a character."  *Id.*  Further, Plaintiff submits: "[Plaintiff] never argues that a canned message is not viewable by a user.  Rather, [Plaintiff] argues that there is no requirement that the entire sequence of characters that make up the canned message be viewable by the user."  *Id.* at 4-5.

---

[7] The parties have also cited testimony by the named inventor, but inventor testimony is generally of little, if any, relevance during claim construction proceedings and has not significantly influenced the Court's analysis here.  *See* Dkt. No. 55 at 12-13; Dkt. No. 57 at 20-22; *see also Howmedica*, 540 F.3d at 1346-47.

At the March 17, 2015 hearing, Defendant expressed agreement with the Court's preliminary construction but nonetheless urged that at least part of a "canned message" must be for viewing by a user.

(2)  Analysis

In *Sprint*, the Court construed this disputed term to mean "predefined sequence of characters."  *Sprint* at 71.  The Court reaches the same construction here as in *Sprint* and for substantially the same reasons.  *See id.* at 67-71.

Defendant's proposed construction, which would seemingly require that the entire content of a "canned message" must be "for viewing by a user," lacks adequate support.  Instead, the dictionary definition submitted by the parties in this case and in *Sprint* demonstrates that a "message" can include parts that are not viewed by a user.  *See* Dkt. No. 55, Ex. E, *Newton's Telecom Dictionary* 373 (11th ed. 1996)) ("A sequence of characters used to convey information or data.  In data communications, messages are usually in an agreed format with a heading which establishes the address to which the message will be sent and the text which is the actual message and maybe some information to signify the end of the message.").

On balance, neither side has adequately justified departing from the construction reached in *Sprint*.  The Court therefore hereby expressly rejects the parties' proposed constructions.

The Court accordingly hereby construes **"canned message"** to mean **"predefined sequence of characters."**

**B.  "selecting an appropriate canned message from the second file for transmission to the second terminal"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | This term is indefinite under 35 U.S.C. § 112, ¶ 2 |

Dkt. No. 55 at 13; Dkt. No. 57 at 22.  The parties submit that this term appears in Claim 8.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning."

(1)  The Parties' Positions

Plaintiff argues that no construction is necessary because "[e]ach portion of the identified term is clearly defined within the claims, specification, and prosecution history and used in a consistent manner."  Dkt. No. 55 at 14.

Defendant responds that "[t]he claim language, specification, and prosecution history fail to provide any objective criteria that would allow one skilled in the art to distinguish between an 'appropriate canned message' and 'inappropriate canned message.'"  Dkt. No. 57 at 22-23.

Plaintiff replies that "[Defendant] ignores that it is the device that performs this 'selecting' step of the method claim and thus, a person of ordinary skill in the art would understand that the 'appropriate' message from a file is simply carrying out a command initiated by a user causing the device to retrieve the canned message that corresponds to a predetermined code."  Dkt. No. 58 at 5.

At the March 17, 2015 hearing, Defendant reiterated that the specification provides no standard for determining what is "appropriate."

(2)  Analysis

The specification refers to retrieving an "appropriate" canned message by using a message code:

> In accordance with another feature of the present invention, corresponding canned message files are also maintained at receiving subscriber terminals, such that the canned messages may be communicated to the receiving subscribers in message code form.  The received message codes are then used to retrieve the *appropriate*

*canned messages* and multiple response options from stored files, and displayed by the receiving party terminals.

'506 Patent at 2:28-35 (emphasis added).

Claim 8 of the '506 Patent, however, recites (emphasis added):

8.  A method of communicating messages between subscribers to an electronic messaging network, comprising the steps of:
  maintaining, at a network operation center, a first file of canned messages and message codes respectively assigned to the canned messages;
  maintaining at a first terminal of a first subscriber, a second file of canned messages and message codes corresponding to the first file;
  maintaining, at a second terminal of a second subscriber, a third file of canned messages and message codes corresponding to the first file;
  *selecting an appropriate canned message from the second file for transmission to the second terminal*;
  sending the message code assigned to the selected canned message to the network operation center;
  relaying the message code assigned to the selected canned message from the network operation center to the second terminal;
  retrieving the selected canned message from the third file using the assigned message code received from the network operation center; and
  displaying the selected canned message retrieved from the third file.

Thus, although Plaintiff argues that "appropriate" refers to "retriev[ing] the canned message that corresponds to a predetermined code" (Dkt. No. 58 at 5), the claim instead recites selection of an "appropriate" message "for transmission to the second terminal."  In other words, the claim requires that from among the canned messages contained in the "second file of canned messages and message codes," an "appropriate canned message" is selected for transmission.

Such a reading is also supported by the specification:

In accordance with the present invention, calling terminal 10 includes a stored file of canned messages and associated canned message codes.  Referring to the flow chart of FIG. 2, when a calling party wishes to send a message to a receiving party at terminal 14 (FIG. 1), the terminal retrieves the file of the canned messages from storage (step 22) and displays the file to the calling party (step 24).  The calling party browses through the file to determine if the text of any of the canned messages is *appropriate to convey the particular message that the calling party wishes to send to the receiving party*.  If an *appropriate canned message* is noted, the *calling party selects* this canned message (step 26) using suitable pointing

means, such as a mouse, cursor, etc.  Based on the canned message selection,
terminal 10 retrieves the associated canned message code from the file (step 28).

'506 Patent at 3:50-58 (emphasis added).

The remaining issue is whether the claim is rendered indefinite by reciting selection of a message according to, in the words of the specification, what the "calling party wishes." *Id.*

On one hand, claim scope cannot depend upon the "unpredictable vagaries of any one person's opinion." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (quoting *Datamize*, 417 F.3d at 1350).  On the other hand, references to what is "desired," for example, are not necessarily inappropriate.  *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1316-17 (Fed. Cir. 2007) (construing claims reciting "desired" tooth positions).

Here, the above-quoted context of the claim demonstrates that the scope of the claim does not turn on subjective opinion.  That is, the claim does *not* recite that the particular desire of a user has any impact on the operation of the claimed invention (other than simply determining which of several possible messages will be transmitted).  In other words, although the subjective desire of the user may determine the content of the message that is transmitted, the particular content of a transmitted message has no relevant effect on the manner of operation of the claimed invention.  Thus, although an expression of the subjective desire of a user may be a necessary input, that subjective desire is not itself a limitation.  As a result, the word "appropriate" does *not* render the claim scope subjective.

The Court therefore hereby expressly rejects Defendant's indefiniteness argument.  No further construction is necessary.

The Court accordingly hereby construes **"selecting an appropriate canned message from the second file for transmission to the second terminal"** to have is **plain meaning** apart

from construction of the constituent term "canned message," which is addressed separately

above.

**C.  "means for retrieving the file of canned messages and the file of canned multiple response options from the memory" and "means for retrieving the file of canned messages and message codes from the memory"**

| **"means for retrieving the file of canned messages and the file of canned multiple response options from the memory"** (Claim 19) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>     "retrieving the file of canned messages and the file of canned multiple response options from the memory"<br><br>Structure:<br>     "CPU 1[1]0, ROM 112 (including stored application program for controlling terminal operation) and system bus 130 (which interconnects system components such as CPU 110, ROM 112, and RAM 114); and equivalents thereof" | Function:<br>     "retrieving the file of canned messages and the file of canned multiple response options from the memory"<br><br>Structure:<br>     "None.  This term is indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 25-26; Dkt. No. 57 at 24.[8]

Plaintiff proposes the constructions that the parties agreed upon in *Sprint*.  *See Sprint*

at 78-79.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties

with the following preliminary construction: "Function: 'retrieving the file of canned messages

and the file of canned multiple response options from the memory' / Structure: 'CPU 110,

ROM 112 (including stored application program for controlling terminal operation) and system

---

[8] The parties previously disputed the term "means for retrieving the file of canned messages and message codes from the memory" in Claim 21.  Because Plaintiff no longer asserts Claim 21 (*see* Dkt. No. 61), the Court does not address that term.

bus 130 (which interconnects system components such as CPU 110, ROM 112, and RAM 114); and equivalents thereof.'"

Plaintiff argues that "the '506 Patent specification clearly identifies the calling terminal as performing the function of retrieving the associated canned message, message code, and/or response option from the file."  Dkt. No. 55 at 26 (citing '506 Patent at 3:56-58 & 4:46-48). "The specification also explains," Plaintiff submits, "that terminal 10 consists of CPU 110, ROM 112, RAM 114, as well as other components not related to the recited function."  Dkt. No. 55 at 26 (citing '506 Patent at 7:44-54).

Defendant responds that the "conclusory passages" relied upon by Plaintiff "are wholly devoid of any description of the necessary steps to carry out the claimed functions."  Dkt. No. 57 at 26 (citing '506 Patent at 3:56-58 & 4:46-48).

Plaintiff replies that "the specification provides that specified hardware (terminal 10) performs the 'retrieving' functions," and "[w]ere an algorithm required, a PHOSITA would recognize the specification to provide sufficient disclosure in prose and flow-chart format."  Dkt. No. 58 at 10.

At the March 17, 2015 hearing, Defendant emphasized that the specification contains no disclosure of how CPU 110 operates or what the "application program" is.

(2)  Analysis

Claim 19 of the '506 Patent recites (emphasis added):

19.  A message terminal for use in an electronic messaging network, comprising:
a memory storing a file of canned messages and message codes respectively assigned thereto and a file of canned multiple response options and response codes respectively assigned thereto;
*means for retrieving the file of canned messages and the file of canned multiple response options from the memory*;

- 43 -

       a display for displaying the canned messages and the multiple response
options in the retrieved file;
       means for selecting one of the canned messages and at least one of the
multiple response options appropriate for the selected canned message for
communication to a designated other message terminal; and
       a transmitter for transmitting the message code assigned to the selected
canned message and the response code assigned to the at least one multiple
response option over a communications link of the network.

"[A] means-plus-function claim element for which the only disclosed structure is a

general purpose computer is invalid if the specification fails to disclose an algorithm for

performing the claimed function." *Net MoneyIN*, 545 F.3d at 1367; *see WMS Gaming*, 184 F.3d

at 1349 ("In a means-plus-function claim in which the disclosed structure is a computer, or

microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general

purpose computer, but rather the special purpose computer programmed to perform the disclosed

algorithm.").

      There is, however, an exception to the general rule requiring an algorithm. Specifically,

when the corresponding structure is a general purpose computer, an algorithm is required *unless*

the recited function can be achieved by any general purpose computer without special

programming. *In re Katz*, 639 F.3d at 1316 ("Absent a possible narrower construction of the

terms 'processing,' 'receiving,' and 'storing,' . . . those functions can be achieved by any general

purpose computer without special programming. As such, it was not necessary to disclose more

structure than the general purpose processor that performs those functions."); *accord Ergo*

*Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) ("In *In re Katz*,

we held that '[a]bsent a possible narrower construction' of the terms 'processing,' 'receiving,'

and 'storing,' the disclosure of a general-purpose computer was sufficient. . . . In other words, a

general-purpose computer is sufficient structure if the function of a term such as 'means for

processing' requires no more than merely 'processing,' which any general-purpose computer

may do without any special programming.") (citations omitted); *but see id.* ("It is only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed.").

The claimed functions here, which require merely retrieving files from memory, are "functions [that] can be achieved by any general purpose computer without special programming." *Katz*, 639 F.3d at 1316. In particular, the function of "retrieving" from memory is analogous to the "storing" function that *Katz* identified as an example of a function for which no special programming is required. *Id.*

Because the structures agreed upon in *Sprint*, and proposed by Plaintiff here, amount to a general-purpose processor and associated components, the Court adopts those structures here. Although these structures include an "application program for controlling terminal operation" that presumably may have additional capabilities, what is claimed is merely "retrieving," which can be performed by any general-purpose computer without special programming. *See id.*

The Court therefore hereby expressly rejects Defendant's indefiniteness arguments and finds that for the term **"means for retrieving the file of canned messages and the file of canned multiple response options from the memory,"** the function is **"retrieving the file of canned messages and the file of canned multiple response options from the memory,"** and the corresponding structure is **"CPU 110, ROM 112 (including stored application program for controlling terminal operation) and system bus 130 (which interconnects system components such as CPU 110, ROM 112, and RAM 114); and equivalents thereof."**

**D. "means for selecting one of the canned messages for communication to a designated other message terminal and for selecting multiple response options appropriate for the selected canned message," "means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal," and "means for adding parameters to the selected canned message for inclusion with the assigned message code transmitted over the communications link"**

| "means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal" (Claim 19) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
| Function:<br>    "selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal"<br><br>Structure:<br>    "terminal keypad 126; or a mouse; or a cursor; and equivalents thereof" | Function:<br>    "selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal"<br><br>Structure:<br>    "None.  This term is indefinite under 35 U.S.C. § 112, ¶ 2." |

Dkt. No. 55 at 27-28; Dkt. No. 57 at 26-27.[9]

The parties agree that this is a means-plus-function term, and they agree upon the claimed function.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Function: 'selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for

---

[9] The parties previously disputed the terms "means for adding parameters to the selected canned message for inclusion with the assigned message code transmitted over the communications link" in Claim 20 and "means for selecting one of the canned messages for communication to a designated other message terminal and for selecting multiple response options appropriate for the selected canned message" in Claim 21.  Because Plaintiff no longer asserts Claim 20 or Claim 21 (*see* Dkt. No. 61), the Court does not address those terms.

communication to a designated other message terminal' / Structure: 'terminal keypad 126; or a mouse; or a cursor; and equivalents thereof.'" At the March 17, 2015 hearing, the parties agreed to the Court's preliminary construction.

The Court accordingly hereby finds that for the term **"means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal,"** the function is **"selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal,"** and the corresponding structure is **"terminal keypad 126; or a mouse; or a cursor; and equivalents thereof."**

## VI.  DISPUTED TERMS IN U.S. PATENT NO. 5,809,428

### A.  "probe message"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| "a message that is generated by the network operations center to locate a mobile unit for the purpose of determining whether the mobile unit can be reached" | "a message that is generated for the specific purpose of determining the location of a mobile unit" |

Dkt. No. 55 at 9; Dkt. No. 57 at 28.  The parties submit that this term appears in Claim 8.

In *Sprint*, the Court construed "probe message" to mean "a message that is generated to locate a mobile unit."  *See Sprint* at 43-48.

In *Amazon*, the Court "adopt[ed] the following construction for 'probe message' agreed-upon by the parties at the October 17, 2014 hearing: 'a message that is generated by the network operations center to locate a mobile unit for the purpose of determining whether the mobile unit can be reached.'"  *Amazon* at 10; *see id.* at 7-10.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "a message that is generated to locate a mobile unit."

(1)  The Parties' Positions

Plaintiff submits that "the primary purpose of the '428 Patent is determining whether the mobile unit is available," which Plaintiff argues is supported by *Amazon* as well as by expert opinion and by extrinsic technical dictionary definitions.  Dkt. No. 55 at 10.

Defendant responds that in *Amazon* "the Court simply adopted the parties' agreed construction," and "[t]hough the Court correctly construed 'probe message' in the *Sprint* case, [Plaintiff's] attempts to twist the Court's construction have created the need for additional clarification."  Dkt. No. 57 at 28.  Defendant also argues that the extrinsic evidence cited by Plaintiff actually contradicts Plaintiff's proposed construction.  *Id.* at 29.

Plaintiff replies that "[a]lthough probe messages are used for other purposes in related patents, the claims of the '428 Patent only use the probe to determine if the mobile unit can be reached because, if not, the network stores the message."  Dkt. No. 58 at 5-6.  Plaintiff also notes that it "agrees with [Defendant] to remove the requirement that the probe message be generated by the NOC [(network operations center)]."  *Id.* at 6.

At the March 17, 2015 hearing, Defendant agreed to the Court's preliminary construction.

(2)  Analysis

The Court hereby expressly rejects Plaintiff's proposed construction (which was the substantially agreed-upon construction in *Amazon*) because, in particular, Plaintiff appears to be interpreting the phrase "for the purpose of determining whether the mobile unit can be reached"

as a statement of the sole purpose or function of a probe message. Instead, for the reasons set forth in *Sprint*, the Court reaffirms the finding in *Sprint* that "[t]he intrinsic evidence . . . consistently demonstrates that although a probe message need not itself specify a location or contain location information, a probe message is generated for locating a mobile unit." *Sprint* at 47; *see id.* at 43-48; *see also* '428 Patent at 1:39-40, 4:15-40 & 7:59-8:5; '946 Patent[10] at 10:1-8.

Nonetheless, Defendant's proposal of the phrase "for the specific purpose of determining the location" might be read in an excessively narrow fashion by the finder of fact. For example, a finder of fact might read Defendant's proposal as requiring determination of Global Positioning System (GPS) coordinates. As quoted above, *Sprint* found that "a probe message need not itself specify a location or contain location information." *Sprint* at 47. Further, Defendant has not demonstrated that a response to a probe message must specify a location such as GPS coordinates.

Instead, as Plaintiff argued in *Amazon*, "the 'location' of a mobile unit *does not necessarily mean a geographic location, but rather a network location*—including whether a unit is even located in the network (that is, its status in the network)." *Amazon* at 9 (emphasis added). The Court agrees with Plaintiff's explanation in this regard, albeit with the caveat that mere "status in the network" is insufficient. Instead, the Court's construction refers to, as Plaintiff puts it, "geographic location" or "network location." *Id.*

The Court therefore hereby construes **"probe message"** to mean **"a message that is generated to locate a mobile unit."**

---

[10] The '428 Patent incorporates the '946 Patent by reference. *See* '428 Patent at 1:36-39 & 7:59-64.

**B. "data message"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a message containing content that is viewable by a user" |

Dkt. No. 55 at 10; Dkt. No. 57 at 29.  The parties submit that this term appears in Claim 8.

The parties in *Sprint* and *Amazon* did not present "data message" as a disputed term for construction or as a term for agreed-upon construction.

Shortly before the start of the March 17, 2015 hearing, the Court provided the parties with the following preliminary construction: "Plain meaning."  At the March 17, 2015 hearing, both sides agreed to this preliminary construction.

The Court accordingly hereby construes **"data message"** to have its **plain meaning**.

## VII. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.

Further, the Court finds a lack of sufficient corresponding structure as to the term "means for including an error correcting code in the radio frequency signals containing the message data" in Claim 5 of the '946 Patent.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 12th day of May, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Term | Parties' Agreement |
|---|---|
| United States Patent No. 5,754,946 | |
| "switch actuatable" (Cl. 1) | "a switch that requires user activation" |
| "only upon receipt of the indication" (Cl. 8) | "plain meaning" |
| "display for displaying said message" (Cl. 1) | "plain meaning" |
| "error correcting code" (Cl. 3) | "plain meaning" |
| "means for transmitting radio frequency signals containing a message to the mobile unit" (Cl. 7) | No construction necessary |
| "means for receiving, from the mobile unit, radio frequency signals representing a portion of the message that the user desires retransmission" (Cl. 7) | No construction necessary |
| "means for receiving a radio frequency message from the network" (Cl. 1) | No construction necessary |
| United States Patent No. 5,809,428 | |
| "network operations center" (Cl. 8) | "plain meaning" |
| "acknowledgement message" (Cl. 8) | "plain meaning" |
| "registration message" (Cl. 9) | "plain meaning" |
| "marking at the network operations center a data message as undelivered" (Cl. 8) | "plain meaning" |
| United States Patent No. 5,894,506 | |
| "network operations center" (Cl. 8) | "plain meaning" |

| | |
|---|---|
| "canned multiple response options" (Cl. 12) | "predefined responses to a canned message" |
| "message code" (Cl. 8) | "plain meaning" |
| "response code" (Cl. 12) | "plain meaning" |
| "relaying the message code assigned to the selected canned message from the network operation center to the second terminal" (Cl. 8) | "plain meaning" |
| "relaying the added multiple response options with the assigned message code to the second terminal" (Cl. 11) | "plain meaning" |
| "relaying the message and response codes from the network operation center to the second terminal" (Cl. 12) | "plain meaning" |
| "relaying the added parameter with the assigned message and response codes to the second terminal" (Cl. 13) | "plain meaning" |
| "routing the selected response option from the network operation center to the first terminal" (Cl. 11) | "plain meaning" |
| "adding a parameter to the canned message selected from the second file" (Cl. 10) | "plain meaning" |
| "message compiler for compiling the assigned message code and the response codes assigned to the selected multiple response options into a message for transmission by the transmitter" (Cl. 21) | "plain meaning" |

Dkt. No. 49 at Ex. A; Dkt. No. 57 at 2 n.1; Dkt. No. 59 at Ex. B.[11]

---

[11] Some of these terms appear only in claims that Plaintiff no longer asserts. *See* Dkt. No. 61.